IN THE UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CYNTHIA BOURGEOIS                                                                                     PLAINTIFF

VS.                                         CASE NO. 06-CV-4061

DOUGLAS VANDERBILT, et al.                                                                 DEFENDANTS

NATIONAL INTERSTATE INSURANCE COMPANY                                       INTERVENOR

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss filed by Separate Defendant Harrah's Bossier City Investment Company, LLC ("Harrah's"). (Doc. 40). Plaintiff has responded. (Docs. 55-58). Harrah's has replied to Plaintiff's response. (Doc. 61-1). The Court finds the matter ripe for consideration.

## I.  BACKGROUND

Plaintiff is a resident of Baton Rouge, Louisiana. On July 30, 2005, she was employed as a bus driver for Dixieland Tours and Cruises, Inc., also of Baton Rouge, Louisiana. While she was driving Dixieland's bus south on U.S. Highway 71 in Miller County, Arkansas, she was struck by a northbound truck driven by Separate Defendant Douglas Vanderbilt of Texarkana, Texas. Vanderbilt was returning home from a trip to Harrah's, which is located in Shreveport, Louisiana. Plaintiff was injured in the collision and has alleged damages exceeding $75,000.

Plaintiff has filed a complaint against Vanderbilt,[1] alleging that he was intoxicated at the time of the accident and was operating his vehicle in an unlawful, imprudent, and unsafe manner. In her Amended Complaint, Plaintiff added Harrah's as a defendant, alleging that Harrah's "contributed to and caused Vanderbilt's severe intoxication, failed to stop providing Vanderbilt liquor, enabled Vanderbilt by tendering his auto and keys, and failed to make any effort to stop Vanderbilt from operating his auto in an intoxicated and exhausted condition, given that he had been in [Harrah's] for at least [fourteen] hours drinking liquor and gambling." Harrah's has filed a motion to dismiss, asserting that the Court does not have personal jurisdiction over Harrah's.

## II.  DISCUSSION

The issue before this Court is whether the exercise of personal jurisdiction over Harrah's comports with due process. In a diversity action, the Court may assume jurisdiction over non-resident defendants only to the extent permitted by the long-arm statute of Arkansas and by the Due Process Clause of the Fourteenth Amendment. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (citing *Morris v. Barkbuster, Inc.*, 923 F.2d 1277 (8th Cir. 1991)). The long-arm statute of Arkansas confers jurisdiction to the fullest constitutional extent; thus, the Court's inquiry is limited to whether the exercise of personal jurisdiction comports with due process. Ark. Code Ann. § 16-4-101(B) (Repl. 1999)*; Dever*, 380 F.3d at 1073.

"Due process requires minimum contacts between a non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and

---

[1] Plaintiff has also filed suit against Southern Farm Bureau Casualty Insurance Company, State Farm Mutual Insurance, and National Interstate Insurance Company. State Farm Mutual Insurance has been dismissed from the case. The other defendants remain; however, Harrah's is the only defendant involved in the present Motion to Dismiss. Thus, the background section of this opinion will focus on Harrah's role in this case.

substantial justice." *Dever*, 380 F.3d at 1073. There are two theories for evaluating minimum contacts: general jurisdiction and specific jurisdiction. *Id*. Under the general jurisdiction theory, the Court may hear this lawsuit against Harrah's if it has "continuous and systematic" contacts with Arkansas, even if the injuries at issue in this lawsuit did not arise out of the casino's activities directed at Arkansas. *See id*. In contrast, specific jurisdiction is viable when the cause of action at issue arose out of or is related to a defendant's activities within a state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174 (1985).

Both theories of personal jurisdiction require some act by which Harrah's purposely availed itself of the privilege of conducting activities within Arkansas, thus invoking the benefits and protections of its laws. *See Dever*, 380 F.3d at 1073 (citing *Hanson v. Denckla*, 357 U.S. 235 (1958)). If the Court determines that Harrah's has minimum contacts with Arkansas, it then may consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *See id.* (quoting *Burger King Corp.*, 471 U.S. 462 (1985)).

The Eighth Circuit has instructed courts to consider the following factors when resolving a personal jurisdiction inquiry, with significant weight given to the first three factors: (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Dever*, 380 F.3d at 1073–74.

*A. The Contacts of Harrah's Casino with the State of Arkansas*

Some part of Harrah's casino business is undeniably connected to and carried out in Arkansas. Plaintiff's discovery has demonstrated that a significant portion of Harrah's revenue

comes from Arkansas. Harrah's earned at least $4.8 million in slot machine revenue from Arkansas residents in 2005-2006, and it surely earned other revenue from Arkansas residents in various other games. Over 14,380 Arkansas patrons are registered with Harrah's, demonstrating the significance of Arkansas residents to Harrah's.

Harrah's has an active direct mail marketing campaign to Arkansas residents. It sent direct mailer solicitations and advertisements on a regular basis to its registered Arkansas patrons. Shannon McKeller, an employee of Harrah's, testified that Harrah's was aware of "spill-over" coverage of its Texas and Louisiana radio advertising in multiple Arkansas counties, including Miller County, where Texarkana is located. Harrah's was also aware of Texas and Louisiana television advertising "spill-over" into some Arkansas counties. Harrah's advertised in the Texarkana Gazette, a newspaper that serves both Arkansans and Texans. In 2005, thirty-three percent of those newspapers containing ads for Harrah's reached Arkansans. Overall, Harrah's spent $144,853 in Arkansas-based advertising from 2003 to 2007. It is clear that Harrah's had a regular advertising presence in Arkansas at the time of the automobile accident at issue.

In 2005, Harrah's had contracts with tour bus companies to shuttle Arkansans to and from Harrah's. At least two of these tour bus companies were located in Arkansas. Harrah's also contracted with Southland Greyhound Park in West Memphis, Arkansas, and Oaklawn race track in Hot Springs, Arkansas, to simulcast Harrah's horse racing. Even though any proceeds were paid to patrons by Southland Greyhound Park and Oaklawn, these Arkansas tracks adjusted credits with Harrah's so that the ultimate profit or loss occurred between the patron in Arkansas

and Harrah's. Thus, Harrah's had a revenue source based in Arkansas, even though it had no actual, physical presence in Arkansas in 2005.

   B.  *Specific Jurisdiction*

The question here in determining whether the Court has jurisdiction over Harrah's under a specific jurisdiction analysis is whether Harrah's transacts any business in Arkansas and whether Plaintiff's claim arises from those transactions. *See Burger King*, 471 U.S. at 472. There is little question that Harrah's transacts business in Arkansas. The wide expanse of its activities in Arkansas, going beyond mere advertising, is strong evidence that Harrah's transacts business in this State. However, Plaintiff's claims against Harrah's do not "arise from" its transactions within Arkansas. Thus, this is not a case of specific jurisdiction.

   C.  *General Jurisdiction*

The first question in determining whether the Court has jurisdiction over Harrah's under a general jurisdiction analysis is whether Harrah's has "continuous and systematic" contacts with the State of Arkansas. *See Dever*, 380 F.3d at 1073. Here, there is evidence that Harrah's solicited business from Arkansas during the relevant time period surrounding the automobile collision at issue.

Harrah's has conducted several activities with the purpose of convincing Arkansans to spend money at their casino and racetrack. Harrah's advertised in a newspaper that was distributed in Arkansas. Harrah's sent direct mailers to Arkansas residents to entice them to the casino. Harrah's contracted with buses in Arkansas to transport Arkansas residents to Harrah's. Moreover, Harrah's received substantial revenues and profits from Arkansas residents. Harrah's had contracts to simulcast its races at Southland Greyhound Park and Oaklawn in Arkansas.

Harrah's clearly benefitted from business activity within Arkansas in 2005.  The Court finds that Harrah's contacts are sufficiently continuous and systematic to support a finding of general jurisdiction over Harrah's.

Now, the Court moves to the second prong of the due process analysis and consider whether Harrah's "minimum contacts" with Arkansas are "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945).  The Eighth Circuit has instructed its courts to consider five factors when resolving personal jurisdiction inquiries, *see Dever*, 380 F.3d at 1073–74, and the Court will examine those factors now.

First, the Court examines the nature and quality of Harrah's contacts with Arkansas.  Its Arkansas contacts are not "random, fortuitous, or attenuated" contacts," *Burger King*, 471 U.S. at 475, but rather the result of a concerted, sophisticated effort to woo Arkansas residents to visit Harrah's in Louisiana.  Harrah's advertised in Arkansas and solicited Arkansans to visit its casino, shuttled Arkansans to its casino, simulcasted in Arkansas, and derived a significant amount of revenue from Arkansans.

Next, the Court reviews the quantity of Harrah's contacts with Arkansas, Harrah's contacts with Arkansas are frequent, significant and systematic, especially considering its close geographic proximity to Arkansas patrons.  Harrah's radio advertisements reach several Arkansas counties.  In 2005, Harrah's simulcasted its Louisiana horse racing during May to October.  Harrah's sent direct mailer solicitations to over 14,000 Arkansans.

The Court now turns to the third factor, which is the relation of the cause of action to Harrah's contacts with Arkansas.  The cause of action here is an automobile accident in which

the vehicle driven by Separate Defendant Douglas Vanderbilt, a Texas resident, collided with a tour bus driven by Plaintiff Cynthia Bourgeois, a Louisiana resident.  Thus, it was not Harrah's contacts with Arkansas that caused this accident.  However, the fact that the cause of action is not linked to Harrah's contacts with Arkansas does not necessarily preclude a finding of personal jurisdiction, *see Dever*, 380 F.3d at 1074, because this factor simply distinguishes between specific and general jurisdiction.  *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (1996).  The Court has already determined that this case is not an appropriate case for specific jurisdiction.

Lastly, the Court considers the fourth and fifth factors, which are respectively the interest of the forum state in providing a forum for its residents and the convenience of the parties.  The interest that Arkansas has in this matter is that the accident occurred in Arkansas.  However, Plaintiff is not an Arkansas resident, and Harrah's is not an Arkansas company but rather a Louisiana partnership.  Arkansas's only interest here is the obvious one that Arkansas is interested in resolving conflicts that arise from automobile accidents that occur within its jurisdiction.  Bourgeois lives in Baton Rouge, Louisiana, and has chosen to bring her action in this Court.  Harrah's is located approximately seventy miles away from Texarkana.  Harrah's close geographic proximity to Texarkana ensures that minimal inconvenience, if any, exists for Harrah's to be haled into federal court in Texarkana, Arkansas.  Giving due weight to the nature, quality, and quantity of Harrah's contacts with Arkansas, Harrah's could "reasonably anticipate being haled into court" here.

When facing a close personal jurisdiction case such as this one, it is important to remember the fundamental purposes behind the doctrine of "minimal contacts":

> The concept of minimum contacts ... can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to insure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

*Volkswagon,* 444 U.S. at 291, 100 S. Ct. 559. Here, Harrah's, a corporate defendant, will not be litigating in a distant or inconvenient forum, especially given today's modern standards and conveniences. Further, this Court—sitting in Arkansas—does not believe it is reaching out beyond the limits imposed upon it by the concept of federalism. For all these reasons, the Court concludes that has personal jurisdiction over Harrah's.

### III.  CONCLUSION

For reasons discussed herein and above, the Court finds that the Motion to Dismiss filed by Separate Defendant Harrah's Harrah's Bossier City Investment Company, LLC, should be and hereby is **DENIED**. An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 23rd day of October, 2007.

                                                                  /s/ Harry F. Barnes
                                                          Hon. Harry F. Barnes
                                                          United States District Judge